Dave CHANDLER; Daniel Hayes; Cheryl St. John; Robert G. Prokop, Plaintiffs–Appellees,

v.

The CITY OF ARVADA, COLORADO, Defendant–Appellant.

No. 01–1121.

United States Court of Appeals, Tenth Circuit.

June 11, 2002.

Blain D. Myhre (Mark G. Grueskin, Edward T. Ramey, and Lisa D.L. Williams with him on the briefs), of Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Defendant–Appellant.

Neil D. O'Toole of O'Toole & Sbarbaro, P.C., Denver, CO, for Plaintiffs–Appellees.

Before SEYMOUR and PORFILIO, Circuit Judges, and STAGG, District Judge.*

PORFILIO, Senior Circuit Judge.

Arvada City Ordinance No. 3590 prohibits nonresidents of Arvada, Colorado, from circulating initiative, referendum, or recall petitions in the City of Arvada. Arvada appeals the district court's grant of summary judgment in favor of four individuals who challenged the Ordinance's constitutionality. Arvada contends the district court erred in declaring the Ordinance unconstitutional and enjoining its enforcement. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm, in part, and reverse, in part.

## I. BACKGROUND

Dave Chandler, Robert Prokop, and Cheryl St. John are Arvada residents and

---

* The Honorable Tom Stagg, District Judge for the United States District Court Western District of Louisiana, sitting by designation.

qualified Arvada electors. Daniel Hayes, a registered Colorado elector, is not qualified to vote in Arvada because he is not an Arvada resident. Mr. Hayes, who owns land adjacent to Arvada, is a resident of unincorporated Jefferson County, Colorado. These Plaintiffs have participated in Arvada's petition process to curb the City's growth. They plan to promote ordinances which limit the City's development and to use nonresident circulators to secure the number of signatures necessary to place a measure on the ballot.

■ Arvada is a home rule municipality under Article XX, § 6 of the Colorado Constitution. As such, Arvada has "plenary authority to regulate matters of local concern." *City of Commerce City v. State,* 40 P.3d 1273, 1279 (Colo.2002) (citations omitted). Article XX of the Colorado Constitution "grant[s] to home rule municipalities *every power* theretofore possessed by the legislature to authorize municipalities to function in local and municipal affairs." *City & County of Denver v. Qwest Corp.,* 18 P.3d 748, 755 (Colo.2001) (internal quotations and citation omitted). Arvada can, therefore, "within its sphere[,] exercise as much legislative power as the Legislature." *Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692, 695 (1960) (en banc).[1]

On August 30, 1999, following a public hearing, the Arvada City Council passed Resolution No. R 99–187, placing Issue 2B–Arvada Residency Rule on the November 1999 ballot. Issue 2B asked Arvada voters:

SHALL THE CITY OF ARVADA REQUIRE THAT, IN ORDER TO CIRCULATE AN ARVADA INITIATIVE, REFERENDUM, OR RECALL ,PETITION, A PERSON MUST BE A RESIDENT OF ARVADA AND

QUALIFIED TO VOTE IN ARVADA ELECTIONS?

On November 2, 1999, over eighty-eight percent of the participating Arvada voters answered 2B affirmatively. After 2B's passage, the Arvada City Council enacted Ordinance No. 3590, amending sections 11–2, 11–24, and 11–25 of the Arvada City Code (Ordinance No. 3590). In pertinent part, the Ordinance provides:

**Section 11–2, Definitions.**

*Circulator* means a person who maintains their principal or primary home or place of abode in Arvada as determined by the rules set forth in Section 1–2–102 C.R.S., as amended, who circulates a petition in an attempt to obtain signatures from qualified registered electors.

**Section 11–25, Requirement for petition.**

Any petition circulated within the city *shall be circulated by an Arvada resident* and shall be signed by registered electors. Each registered elector shall sign his or her own signature, after which he or she shall print his or her name; place of residence, including house or apartment number, street address, city; and the date of signing the petition. Signatures which do not contain all of the information required by this subsection shall be considered invalid. To each petition shall be attached a *notarized affidavit of the circulator, stating the following:*

(1) The circulator's printed name.

(2) The *Arvada address of the circulator.* The affidavit shall affirmatively state that the circulator is a resident of the City of Arvada. Further the circulator shall provide evidence ver-

---

**1.** Our review of Ordinance No. 3590 requires us to keep in mind Colorado's express reservation of the power of initiative and referendum to the people of the State of Colorado, Colo. Const. art. V, § 1(1), and further, to the registered electors of every city and municipality. Colo. Const. art. V, § 1(9).

ifying such residency in a form which is acceptable to the city clerk.

(3) The circulator actually circulated the petition.

(4) Each signature on the petition was affixed in the circulator's presence.

(5) To the best of the circulator's knowledge and belief, each person signing the petition was at the time of the signing a registered elector.

(6) The date the circulator signed the affidavit.

(7) The circulator has not and will not in the future pay directly or indirectly any money or other thing of value to any signer for the purpose of inducing or causing such a signer to affix a signature to the petition.

(8) To the best of the circulator's knowledge and belief, no other person has paid or will pay directly or indirectly any money or thing of value to any signer for the purpose of inducing or causing such signer to affix a signature to the petition.

(9) The circulator accurately represented the text of the ordinance to the signer.

(emphasis added).

Plaintiffs brought suit against Arvada under 42 U.S.C. § 1983, seeking a declaration Ordinance No. 3590 violates the First and Fourteenth Amendments and an injunction prohibiting Arvada from enforcing the Ordinance. The district court issued an unpublished order and memorandum of decision, *Chandler v. City of Arvada*, No. 00–N–0342 (D.Colo. Feb. 8, 2001), finding "Ordinance No. 3590 imposes a severe burden on political speech in Arvada, and, therefore, must be narrowly tailored to protect a compelling municipal interest." Relying on *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 191, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (*ACLF*), *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364, 117 S.Ct. 1364, 137 L.Ed.2d

589 (1997), and *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the court found "Arvada has a compelling interest" in policing its petition process. Despite its compelling interest, the court found Arvada has "alternative means of enforcing its election laws;" "Ordinance No. 3590 significantly reduces the total quantum of political speech and association;" and the Ordinance "is not narrowly tailored to serve a compelling government interest." The court held unconstitutional Ordinance No. 3590 and enjoined Arvada from enforcing its residency requirement. Arvada timely appealed.

## II. STANDARD OF REVIEW

■ We review the district court's summary judgment order de novo, "utilizing the same legal standards employed by the district court." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 921 (10th Cir. 2001) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When reviewing cross-motions for summary judgment, 'our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made,'" in this case, Arvada. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000) (*quoting Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir.1996)). Additionally, First Amendment cases demand our rigorous review of the record. *Horstkoetter v. Dep't of Public Safety*, 159 F.3d 1265, 1270 (10th Cir.1998) (internal quotations and citations omitted) ("[A]n appellate court has an obligation to make an

independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression."). "Thus, we review constitutional facts and conclusions of law de novo." *Z.J. Gifts D-2, L.L.C. v. City of Aurora,* 136 F.3d 683, 685 (10th Cir.1998) (citation omitted).

## III. DISCUSSION

### A.

■ The First Amendment, made applicable to the states via the Fourteenth Amendment, *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), provides, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. It "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Meyer v. Grant,* 486 U.S. 414, 421, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (*quoting Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). Because state action includes city ordinances adopted under state authority, the First Amendment's prohibitions extend to Ordinance No. 3590. *Lovell v. City of Griffin,* 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949 (1938) (citations omitted).

■ Plaintiffs in this case, like the initiative proponents in *Meyer,* "seek by petition to achieve political change in Colorado; their right freely to engage in discussions concerning the need for change is guarded by the First Amendment." 486 U.S. at 421, 108 S.Ct. 1886. Indeed, "[p]etition circulation ... is 'core political speech,' because it involves 'interactive communication concerning political change.'" *ACLF,* 525 U.S. at 186, 119 S.Ct. 636 (*quoting Meyer,* 486 U.S. at 422, 108 S.Ct. 1886). First Amendment protection for such activity is, therefore, "at its zenith." *Id.* at 187, 108 S.Ct. 1886 (*quoting*

*Meyer,* 486 U.S. at 425, 108 S.Ct. 1886) (internal quotations omitted).

■ Petition circulators are akin to handbill distributors in that each seeks to garner public support for his/her viewpoint. *Am. Const. Law Found., Inc. v. Meyer,* 120 F.3d 1092, 1103 (10th Cir.1997) (en banc), *aff'd, ACLF,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599. We recognize "securing ... sufficient signatures to place an initiative measure on the ballot is no small undertaking." *Meyer,* 486 U.S. at 423, 108 S.Ct. 1886 (*quoting State v. Conifer Enters., Inc.,* 82 Wash.2d 94, 508 P.2d 149, 155 (1973) (Rosellini, J., dissenting)). Nevertheless, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *ACLF,* 525 U.S. at 187, 119 S.Ct. 636 (citations omitted).

■ Our analysis of election-related legislation "turn[s] in large measure on whether the regulation at issue is subject to a balancing test or strict scrutiny." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1196 (10th Cir.2000) (*quoting Campbell v. Buckley,* 203 F.3d 738, 742 (10th Cir. 2000)). Applying this analysis, we agree with the district court's conclusion Arvada has a compelling interest in policing the integrity of its petition process, and we are persuaded Ordinance No. 3590 is subject to strict scrutiny. Arvada even acknowledges exacting judicial scrutiny is the appropriate legal standard applicable in this case.

■ Strict scrutiny demands state regulations "impos[ing] 'severe burdens' on speech ... be narrowly tailored to serve a compelling state interest." *ACLF,* 525 U.S. at 192 n. 12, 119 S.Ct. 636 (*quoting* Thomas, J., concurring in judgment). Strict scrutiny is applicable "where the government restricts the overall quantum of speech available to the election or voting

process.... [It] is employed where the quantum of speech is limited due to restrictions on ... the available pool of circulators or other supporters of a candidate or initiative, as in *ACLF* and *Meyer.*" *Campbell,* 203 F.3d at 745.

█ This case, therefore, turns on whether Ordinance No. 3590 is narrowly tailored.[2] Because we think Ordinance No. 3590 is not narrowly tailored to serve Arvada's compelling interest, but for different reasons than those articulated by the district court, we note at the outset "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir.2001) (*quoting United States v. Sandoval,* 29 F.3d 537, 542 n. 6 (10th Cir.1994)).

"Predictability of decisions [in the election law arena] is certainly important, but unfortunately there is no bright line separating severe from lesser burdens." *ACLF,* 525 U.S. at 207, 119 S.Ct. 636 (Thomas, J., concurring in judgment). *See also Timmons,* 520 U.S. at 359, 117 S.Ct. 1364 (*quoting Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) ("[N]o litmus-paper test ... separat[es] those restrictions that are valid from those that are invidious.... [There] is no substitute for the hard judgments that must be made.")). Our judgment is informed by *ACLF, Meyer,* and the record we have before us.[3]

█ Arvada asserts Ordinance No. 3590 is narrowly tailored to prevent fraud, malfeasance, and corruption in municipal elections within the City. The Ordinance is constitutional in the eyes of Arvada because, without it, the Arvada City Clerk has no authority to subpoena nonresidents for a petition protest hearing; and, therefore, Arvada cannot adequately regulate nonresidents to prevent them from improperly influencing the City's elections.[4]

2. *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), is not controlling. The test set forth in *Ward* is applicable to content neutral time, place, or manner regulations where strict scrutiny is inapposite. *Id.* at 798–00, 109 S.Ct. 2746.

3. In both *Buckley v. Am. Const. Law Found., Inc.,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (*ACLF*), and *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), the Supreme Court affirmed this court's holdings. *ACLF,* 525 U.S. at 205, 119 S.Ct. 636 ("[T]he Tenth Circuit correctly separated necessary or proper ballot-access controls from restrictions that unjustifiably inhibit the circulation of ballot-initiative petitions. Therefore, the judgment of the Court of Appeals is *Affirmed.*"); *Meyer,* 486 U.S. at 428, 108 S.Ct. 1886 ("The Court of Appeals correctly held that the statute violates the First and Fourteenth Amendments. Its judgment is therefore affirmed.").

4. The district court's principal reliance on Arvada, Colo., Code § 11–28, to hold the Arvada City Clerk may "enforce subpoenas 'extraterritorially' through Colorado district courts" is misplaced. Section 11–28 purports to provide the City Clerk with power to enforce subpoenas beyond Arvada's borders via Colorado's district courts. *See* § 11–28(a) ("Upon failure of any witness to obey the subpoena, the hearing officer may petition the [state] district court for an order compelling the witness to appear and testify or produce documentary evidence."). Colorado law, however, does not permit Arvada to create jurisdiction in a state district court, absent a grant of jurisdiction in the Colorado Constitution or Colorado Statutes. *Cf.* Colo.Rev.Stat. § 31–2–223 (granting state district court jurisdiction to enforce subpoenas issued by hearing officers in protest hearings relating to initiatives to adopt, amend, or repeal a city charter). *See also City & County of Denver v. Bridwell,* 122 Colo. 520, 224 P.2d 217, 218 (1950) (en banc) ("[I]t is doubtful that the municipality could [by] ordinance effectively or legally provide the right of appeal to a state court ... [because this] would be the exercise of an extraordinary power not included within the powers of local self-government.").

The petition protest hearing, according to Arvada, is an administrative procedure that is essential to policing the integrity of the petition process. One may challenge, for example, inaccurate, incomplete or illegible names, addresses, dates or signatures; failure of the circulator to include all the necessary information in the circulator's affidavit; or failure to have the circulator affidavit notarized. If an Arvada citizen files a protest to the sufficiency of a petition, the Arvada City Clerk "or his/her designee," must conduct a protest hearing to determine the petition's sufficiency. Arvada, Colo., Code §§ 11–27, 11–28. Arvada insists the hearing officer will often need the petition circulator's testimony at a petition protest hearing because many matters are solely within a circulator's "sphere of knowledge," for example,

the date of the circulator's signature, the circulator's belief that signers were registered voters at the time of signing, whether the circulator who signed was the individual who actually circulated the petition, the circulator's belief that no person paid the signers to sign, and the number of signatures on the petition when it was transmitted to the petitioner's committee.

Plaintiffs counter that Arvada possesses adequate authority to protect the integrity of its petition process without the Ordinance's absolute ban on nonresident petition circulators. To support their contention, Plaintiffs cite the Arvada City Code, various state statutes, and argue, relying on *Citizens Against Rent Control/Coalition for Fair Hous. v. City of Berkeley,* 454 U.S. 290, 298, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981) and *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 790, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), fears of fraud are not present in a popular vote on a public issue. Plaintiffs then point to the record, which reveals Christine Koch, Arvada's City Clerk since June 1994, has not conducted a single protest hearing.

■ Plaintiffs also direct our attention to Arvada's Resolution No. R 99–187, placing Issue 2B on the November 1999 ballot. The preamble to that resolution stated, "in 1998 a citizen initiated charter amendment petition was circulated and 82% of the signatures collected were by circulators who lived outside the City of Arvada." While this statement cannot illustrate Arvada's petition process generally, the practical effect of Ordinance No. 3590 is to reduce the pool of eligible petition circulators and limit political conversation and association. Arvada's prohibition on nonresident petition circulators, then, is similar in effect to the requirement petition circulators be registered voters, found unconstitutional in *ACLF.* The requirement circulators be registered "decreases the pool of potential circulators as certainly as that pool is decreased by the prohibition of payment to circulators," held unconstitutional in *Meyer.* *ACLF,* 525 U.S. at 194, 119 S.Ct. 636. The registration requirement, like the ban on paying circulators, "limi[ts] the number of voices who will convey [the initiative proponents'] message and, consequently, cut[s] down the size of the audience [proponents] can reach." *Id.* at 195 (internal quotations and citations omitted). A comparable diminution in core political speech results from Ordinance No. 3590. Our inquiry, however, does not end here.

Our examination of the record reveals no evidence Ordinance No. 3590 is vital to ensuring the integrity of Arvada's petition process. In response to a question by the panel at oral argument, counsel for Arvada said, "there is certainly no evidence that *based on past experience* this [Ordinance No. 3590] is necessary." Nevertheless, we construe all inferences in favor of Arvada and therefore defer to the City's contention the power to subpoena nonresidents is essential. *See Pirkheim,* 229 F.3d at 1010 (citation omitted). Even still, the Ordi-

nance is not narrowly tailored to meet the City's compelling interest in policing its petition process. Ordinance No. 3590 is substantially broader than necessary to ensure the petition process' integrity and is therefore unconstitutional. The City could achieve its interest without wholly banning nonresidents from circulating petitions in Arvada. As suggested at oral argument, Arvada could require, for example, as a prerequisite to circulating an initiative, referendum, or recall petition in the City, the prospective circulator agree to submit to the jurisdiction of the Arvada Municipal Court for the purpose of subpoena enforcement. This suggestion would also obviate a loophole in Ordinance No. 3590. Presently, an Arvada resident who circulates a petition in Arvada, subsequently moves outside the City, but is later called upon by the City Clerk for a protest hearing, is *beyond* the reach of the City Clerk's subpoena power. If, as suggested, all circulators were required to submit to Arvada's jurisdiction, the City Clerk's reach for petition protest purposes would be assured.

### B.

Although the Supreme Court in *ACLF* did not decide whether a state residency requirement for petition circulators offends the First and Fourteenth Amendments, Plaintiffs submit the Court's opinion suggests such a requirement would be upheld. *See ACLF,* 525 U.S. at 197, 119 S.Ct. 636. Plaintiffs offer post-*ACLF* cases that expressly hold constitutional state residency requirements. *See, e.g., Initiative & Referendum Inst. v. Jaeger,* 241 F.3d 614, 616 (8th Cir.2001) ("As the State has a compelling interest in preventing fraud and the regulation does not unduly restrict speech, we conclude that the residency requirement is constitutional."); *Kean v. Clark,* 56 F.Supp.2d 719, 733 (S.D.Miss.1999) ("[T]he circulator residency requirement imposed by way of the amendment to Miss. Const. art. 15, § 273(12) is constitutional because it is narrowly tailored to the aim of preventing campaign fraud."). We, like the district court, think Plaintiffs' speculation about whether a state residency requirement would be constitutional, misses the point.

Relying on *Jaeger,* 241 F.3d at 617, Arvada further submits nonresidents are not "completely shut out of the initiative process by the circulator residency requirement." Rather,

> nonresidents remain free to contribute to campaigns supporting or opposing an initiated measure, to advocate for the passage or defeat of an Arvada initiative or referendum as they see fit, to give their support and assistance in the petition process (save for acting as circulators), and to coordinate, organize, train and even accompany the circulators.

In light of *Meyer,* we are not persuaded by Arvada's argument. In *Meyer,* the Court observed: "[t]hat appellees remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection." 486 U.S. at 424, 108 S.Ct. 1886. The Court then characterized petition circulation as "the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication." *Id.* The First Amendment protects Plaintiffs' right, "not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.*

### C.

 Invalid portions of an ordinance may be severable. *Essence, Inc. v. City of Federal Heights,* 285 F.3d 1272, 1291 (10th Cir.2002) (*citing City of Lakewood v. Colfax Unlimited Assoc.,* 634 P.2d 52, 70 (Colo.1981) (en banc)).

As a general rule, if a[n] ... ordinance is constitutional in one part and unconstitutional in another, the constitutional provision may be sustained and the unconstitutional stricken.... Whether unconstitutional provisions are excised from an otherwise sound law depends on two factors: (1) the autonomy of the portions remaining after the defective provisions have been deleted and (2) the intent of the enacting legislative body.

*City of Lakewood,* 634 P.2d at 70 (citations omitted). A severability clause, such as section 1–7 of the Arvada City Code, "creates a presumption that the legislature would have been satisfied with the remaining portions of the enactment." *Essence, Inc.,* 285 F.3d at 1291 (*citing People ex rel. Tooley v. Seven Thirty–Five East Colfax, Inc.,* 697 P.2d 348, 371 (Colo.1985) (en banc)). The Arvada City Code, in Chapter 1, General Provisions, provides:

**Sec. 1–7. Severability of parts of Code.**

It is hereby declared to be the intention of the city council that the sections, paragraphs, sentences, clauses and phrases of this Code and of any other ordinance of the city are severable, and if any phrase, clause, sentence, paragraph or section of this Code or of any other ordinance of the city shall be declared unconstitutional or invalid ... such unconstitutionality or invalidity shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code or other ordinance of the city....

Arvada, Colo., Code § 1–7. We reflect on the general rule of severability because Ordinance No. 3590 amended sections 11–2, 11–24, and 11–25 of the Arvada City Code. Section 11–24 reads:

**Sec. 11–24. Ballot title and submission clause.**

(2) If any person submitting a petition claims that the ballot title and sub-

mission clause do not fairly express the intent and meaning of the proposed measure, such person shall file a request for an administrative hearing with the city clerk not later than three business days after the ballot title and submission clause are fixed by the city clerk. The city clerk or designee shall appoint a hearing officer. An administrative hearing on the ballot title and submission clause shall be held within seven business days from the date of the request for hearing. If the hearing officer finds that the ballot title and submission clause fairly express the intent and meaning of the proposed measure, the person aggrieved by such decision may appeal such decision to the district court as set forth in the Colorado Rules of Civil Procedure.

Arvada, Colo., Code § 11–24. The district court struck down Ordinance No. 3590 in its entirety. Section 11–24, however, does not offend the First Amendment, can stand on its own after sections 11–2 and 11–25 are stricken, and is therefore sustained.

## IV. CONCLUSION

We **AFFIRM** the district court's holding unconstitutional Arvada City Code sections 11–2 and 11–25, as amended by Ordinance No. 3590. To the extent the court found the amendment of section 11–24 unconstitutional, we **REVERSE.**