**Edward J. FRAMI, John P. Clark, Michael W. Schultz and Calvin J. Zastro, Plaintiffs,**

v.

**Steven V. PONTO, in his official capacity as Chairman of the Wisconsin State Elections Board, Defendant.**

No. 02–C–515–C.

United States District Court, W.D. Wisconsin.

April 9, 2003.

---

Robert G. Bernhoft, Attorney at Law, Milwaukee, WI, for Plaintiffs, John P. Clark, Edward J. Frami, Michael W. Schultz, and Calvin J. Zastro.

Thomas J. Balistreri, Assistant Attorney General, Madison, WI, for Defendant, Steven V. Ponto.

## OPINION & ORDER

BARBARA B. CRABB, District Judge.

This is a civil action for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983. Jurisdiction is present. 28 U.S.C. § 1331. Plaintiffs contend that certain requirements relating to the circulation of nomination papers for candidates for political office found in Wis. Stat. §§ 8.15(4)(a) and 8.40(2) violate their rights under the First Amendment to the United States Constitution. Specifically, plaintiffs object to the statutory requirement that a person who circulates a nomination petition must reside within the district that the candidate named in the petition will represent if he or she is elected. In an order dated September 26, 2002, I granted in part and denied in part plaintiffs' motion for a preliminary injunction. I granted plaintiffs' motion as to their claim that the statutes in question violate the First Amendment by requiring Wisconsin residents to reside in the particular Wisconsin political subdivision that their candidate will represent if elected. I denied plaintiffs' motion with respect to the statutes' requirement that all circulators be residents of the state of Wisconsin. The case is presently before the court for a ruling on plaintiffs' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The parties agree that there are no material factual issues in dispute.

I conclude that the residency requirement for nomination paper circulators found in Wis. Stats. §§ 8.15(4)(a) and 8.40(2) violates the First Amendment, as it applies both to Wisconsin residents who circulate papers outside the political subdivision in which they reside and to circulators who reside outside Wisconsin. Accordingly, I will grant plaintiffs' request for a permanent injunction enjoining defendant from enforcing the residency requirement.

In their brief supporting their Rule 12 motion, plaintiffs have included proposed findings of fact culled from the parties' pleadings. Defendant does not object to any of plaintiffs' proposed facts, so I accept them as undisputed.

## FACTS

Defendant Steven V. Ponto is the chairman of the Wisconsin State Elections Board and is responsible for overseeing the state's electoral process. Political party candidates file nomination petitions with defendant, who reviews the validity of the petitions and may deny access to the ballot if he concludes that the petitions are invalid. Plaintiffs Michael W. Schultz and John P. Clark are political candidates who ran for various federal and state political offices in the November 2002 general election as nominees of the Constitution Party. Plaintiffs Edward J. Frami and Calvin J. Zastro are individuals who circulated ballot access petitions for Constitution Party candidates during the 2002 election cycle. Sections 8.15(4)(a) and 8.40(2) of the Wisconsin statutes require persons who circulate nominating petitions on behalf of a political party candidate to reside in the political district of the candidate who is seeking ballot access. In 2002, plaintiff Schultz was a candidate for the United States House of Representatives from Wisconsin's sixth congressional district. He needed to obtain at least 1000 signatures to qualify for the ballot. Plaintiff Schultz used political supporters who reside outside the sixth congressional district to collect the requisite number of signatures. Plaintiff Schultz collected enough signatures to gain access to the ballot, but defendant denied Schultz ballot access solely because some of his signatures were gathered by petition circulators who did not reside in the sixth congressional district. In requiring that election petition circulators reside in the electoral district

referred to in the nomination papers, the state imposed a significant burden on plaintiff Schultz's ability to collect the signatures required for ballot access and to communicate his political positions on important issues.

Plaintiff Clark was a candidate for Adams County register of deeds in November 2002. Plaintiff Clark needed to collect 200 signatures to qualify for access to the ballot and he did so. However, defendant denied plaintiff Clark access to the ballot solely because some of the signatures were gathered by out-of-district petition circulators. In requiring that election petition circulators reside in the electoral district referred to in the nomination papers, the state imposed a significant burden on plaintiff Clark's ability to collect the signatures required for ballot access and to communicate his political positions on important issues.

Plaintiff Edward J. Frami is a resident of and registered voter in Dousman, Wisconsin. Plaintiff Calvin J. Zastro is a resident of and registered voter in Kawkawlin, Michigan. Plaintiffs Frami and Zastro circulated ballot access petitions for various Constitution Party candidates throughout the state of Wisconsin. Plaintiffs Frami and Zastro found their efforts to gather signatures for Constitution Party members throughout Wisconsin significantly hampered by the requirement that petition circulators reside in the electoral district referred to in the nomination papers. Defendant rejected plaintiffs Frami and Zastro's otherwise valid signatures solely on the basis of the residency requirement. Plaintiffs Frami and Zastro were effectively prohibited from gathering signatures for candidates running in electoral districts where they did not reside.

Plaintiffs Schultz and Clark had strong supporters who were willing to serve as ballot access petition circulators, but defendant rejected their signature submissions because of the residency restrictions imposed by Wisconsin law. Many of plaintiffs Schultz's and Clark's political supporters, including plaintiffs Frami and Zastro, were particularly effective in gathering signatures for ballot access petitions and in advocating Schultz and Clark's candidacies because of their knowledge of the candidates and their close ties to them. Defendant's enforcement of Wis. Stat. §§ 8.15(4)(a) and 8.40(2) required plaintiffs Schultz and Clark to spend additional time and resources locating individuals who were willing to gather signatures and statutorily qualified to do so. The challenged statutes make it significantly more difficult for Constitution Party candidates to gain access to the general election ballot.

## OPINION

In Wisconsin, ballot access is regulated by means of nomination papers. *See, e.g.,* Wis. Stat. § 8.20(2)(a). Nomination papers are essentially petitions that require the collection of a varying number of signatures depending on the office sought. *See, e.g.,* Wis. Stat. § 8.15(6). Nomination papers must be circulated and certified by a "qualified elector." Wis. Stat. §§ 8.15(4)(a), 8.20(3). A qualified elector is any "U.S. citizen age 18 or older who has resided in an election district or ward for 10 days before any election where the citizen offers to vote." Wis. Stat. § 6.02(1). A qualified elector need not be registered to vote. However, § 8.15(4)(a) requires an elector who circulates nomination papers to certify that he or she "resides within the district which the candidate named [in the nomination papers] will represent, if elected." Similarly, § 8.40(2) requires the circulator to state that he or she "resides within the jurisdiction or district in which the petition is circulated." Plaintiffs have moved for a judgment on the pleadings that this residency requirement violates the First Amendment. They

seek the freedom to circulate nomination petitions in electoral districts in which they do not reside, so that, for instance, a resident of Wisconsin's first congressional district could circulate nomination papers for a candidate in the sixth congressional district or a Michigan resident could circulate nomination papers for any candidate running for office in Wisconsin.

Fed.R.Civ.P. 12(c) provides that once "the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." To succeed on their Rule 12(c) motion, plaintiffs must demonstrate that there are no material issues of fact to be resolved. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998). The parties agree that no facts are in dispute and that this case presents only a question of law. Although judgment on the pleadings is appropriate only if plaintiffs are entitled to judgment as a matter of law, *see* 2 *Moore's Federal Practice,* § 12.38 (Matthew Bender 3d ed.), defendant cannot simply rest on unsupported conclusions of law to defeat plaintiffs' motion. *City of South Bend,* 163 F.3d at 452.

At the outset, I note that although plaintiffs Schultz and Clark were candidates for election in 2002 and plaintiffs Frami and Zastrow circulated petitions during that now-completed election cycle, this case is not moot. The Court of Appeals for the Seventh Circuit has recognized that because statutes that regulate ballot access are applicable to future elections, cases such as this one fall under the "capable of repetition yet evading review" exception to the mootness doctrine. *See Krislov v. Rednour,* 226 F.3d 851, 858 (7th Cir.2000).

"Petition circulation ... is 'core political speech,' because it involves 'interactive communication concerning political change'" during which "First Amendment protection ... is 'at its zenith.'" *Buckley v.* *American Constitutional Law Foundation, Inc.,* 525 U.S. 182, 186–87, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (quoting *Meyer v. Grant,* 486 U.S. 414, 422, 425, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988)). In *Buckley,* the Court invalidated on First Amendment grounds a Colorado law that allowed only registered Colorado voters to circulate petitions to qualify an initiative for placement on the ballot. The Court concluded that the law "significantly inhibit[ed] communication with voters about proposed political change" because it decreased substantially the "pool of potential [petition] circulators," which resulted in a corresponding decrease in the size of the audience that initiative proponents could reach with their political message. *Id.* at 192, 194–95, 119 S.Ct. 636. According to the Court; this restriction of First Amendment rights was not justified by the state's asserted interest in detecting fraud in the election process. *Id.* at 196–97, 119 S.Ct. 636. Although the Court struck down Colorado's requirement that petition circulators be registered to vote, it did not reach the question at issue in this case, namely, whether a residency requirement "would be upheld as a needful integrity-policing measure." *Id.* at 197, 119 S.Ct. 636. Interestingly, in a dissent, Chief Justice Rehnquist noted that the majority's decision placed in "serious constitutional jeopardy" the laws of several states that impose a "residency requirement on those who circulate petitions to place candidates on ballots." As an example, he cited Wis. Stat. § 8.40, one of the provisions at issue in this case. *Id.* at 232, n. 3, 119 S.Ct. 636 (Rehnquist, C.J., dissenting).

In the wake of the Supreme Court's decision in *Buckley,* the Court of Appeals for the Seventh Circuit decided *Krislov,* 226 F.3d 851. In *Krislov,* the plaintiffs brought a First Amendment challenge to an Illinois statute dealing with candidate nomination petitions. The court of appeals

noted that ballot access restrictions implicate a variety of constitutionally protected interests, including the rights to associate for political purposes, to vote and to express political preferences. *Id.* at 859 (citing *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979)). The statute at issue in *Krislov* required petition circulators to be registered voters in the political subdivision that the candidate named in the petition would represent if he or she were elected. *Id.* at 856. The court of appeals concluded that the statute was not narrowly tailored to serve a compelling state interest and therefore violated the First Amendment. *Id.* at 866. The court of appeals observed that "[b]ecause circulating nominating petitions necessarily entails political speech, it follows that the First and Fourteenth Amendments compel states to allow their candidates to associate with *nonresidents* for political purposes and to utilize *nonresidents* to speak on their behalf in soliciting signatures for ballot access petitions." *Id.* (Emphasis added). Other courts have reached similar conclusions in striking down residency requirements for candidate petition circulators. *See, e.g., Lerman v. Board of Elections in City of New York,* 232 F.3d 135 (2d Cir.2000).

The parties' initial dispute is whether *Krislov* dictates the outcome of this case. Defendant argues that although the court referred frequently and disapprovingly to residency requirements in that case, "these references are dicta at best because the statute under review did not contain a residency requirement" for nomination petition circulators. Instead, the statute required only that would-be circulators be registered to vote in the relevant political subdivision. Defendant's argument is unconvincing. A registration requirement is a de facto residency requirement. *See, e.g.,* Wis. Stat. § 6.02; 6.55 (establishing residency as prerequisite for registration and voting). It is true that in *Buckley,* the Supreme Court invalidated a registration requirement while explicitly reserving judgment on the compatibility of a residency requirement with the First Amendment, because that question was not presented. But the court of appeals did not express a similar reluctance to act in *Krislov.* Indeed, the court of appeals justified its holding by reference to the Illinois statute's negative impact on the "citizens of the other forty-nine States." Had the court of appeals intended to limit its holding to the statute's voter registration requirement, it would have been pointless to refer to out-of-state residents. Needless to say, residents of the other forty-nine states cannot register to vote in Illinois. Thus, the court of appeals understood the Illinois statute to impose a residency requirement and discussed at length the constitutional problems associated with such requirements. *See, e.g., id.* at 864 (noting that neither residency nor registration requirements test genuineness of candidacy or extent of voter support for candidate). Even if the court of appeal's treatment of residency requirements in *Krislov* is dicta, its reasoning is instructive. Indeed, *Krislov* casts serious doubt on the constitutional validity of the Wisconsin statutes challenged in this case. However, "an analysis of the burden a law places on First Amendment rights is situation-specific." *Id.* at 861. An assessment of the weightiness of a state's interests justifying such a law hinges on the specific facts of each case. *See id.* at 863. The fact that the Illinois statute at issue in *Krislov* did not pass constitutional muster is not dispositive of the question whether Wis. Stat. §§ 8.15(4)(a) and 8.40(2) violate the First Amendment. Accordingly, I must assess the Wisconsin statutes according to their own merits.

■ "In assessing whether a State election law impermissibly burdens First Amendment rights, [courts] examine the character and magnitude of the burden and the extent to which the law serves the State's interests." *Id.* at 859. Defendant concedes that the residency requirement that plaintiffs challenge imposes a severe burden on the First Amendment rights of candidates and petition circulators. *See* Dft.'s Mem. in Opp'n to Plts' Mot. for J. on the Pleadings, dkt. #18, at 1–2; *see also Krislov,* 226 F.3d at 862 (residency and registration requirements imposed substantial burden on candidates' First Amendment rights). The Wisconsin statutes at issue here must withstand exacting scrutiny in the sense that they must be supported by compelling state interests and narrowly tailored to achieve those ends. *See Krislov,* 226 F.3d at 863.

■ Wisconsin has "the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze,* 460 U.S. 780, 788–89 n. 9, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Defendant argues that the requirement that petition circulators reside in the relevant political subdivision serves this purpose, because circulators must certify that they intend to support the candidate. *See* Wis. Stats. § 8.15(4)(a). By contrast, persons who sign election petitions must state only that they "request that the name of [the candidate] be placed on the ballot ... so that voters will have the opportunity to vote for" him or her. Wis. Stat. § 8.15(5)(a). Thus, defendant argues, "support for a candidate is evinced by the number of persons circulating nomination papers," which provides "an initial gauge of support among the electorate" for the candidate. Dft.'s Mem. in Opp'n, dkt. #18, at 3–4.

I am not persuaded. Consider a candidate for representative to the state assembly. According to Wis. Stat. § 8.15(6)(d), an assembly candidate must collect at least 200 signatures on her nomination papers. This feat could be achieved by an industrious candidate operating alone, even assuming she would want to collect an extra 100 signatures to provide a cushion should some of the signatures be invalidated. If the number of petition circulators is the gauge by which one is to separate frivolous candidates from the viable, then it is unclear how a candidate who collects signatures by herself or with the help of one or two supporters has made a "showing of substantial support" for placement on the ballot. Rather, it is the signature requirement that Wisconsin uses to measure the depth of a candidate's support. As plaintiffs point out, this is the very purpose underlying signature requirements. *See Lubin v. Panish,* 415 U.S. 709, 718–19, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (petition signature requirement is typical way of testing "seriousness" of candidacy); *see also Meyer,* 486 U.S. at 425–26, 108 S.Ct. 1886. In Wisconsin, petition signers must both reside and be eligible to vote in the relevant jurisdiction or district. *See, e.g.,* Wis. Stats. § 8.15(3), (4)(a), (5)(a). In comparison to a petition circulator residency requirement, the collection of signatures from eligible voters in a candidate's district is a superior means for achieving the state's asserted goal of insuring that voters' ballots are not clogged with the names of frivolous candidates. *See Krislov,* 226 F.3d at 864 (residency or registration requirements for petition circulators do not test genuineness of a candidacy or extent of voter support for candidate and thus burden protected speech unnecessarily). This is true even though petition signers are not required to promise their support to the candidate whose petition they sign, a promise that would be unenforcea-

ble because of the use of secret ballots. Defendant has failed to explain why the signature requirement by itself is insufficient to separate the wheat from the chaff in terms of frivolous candidacies or why the number of petition circulators a candidate employs provides a more reliable measure of candidate support than the signature requirement alone.

■ Next, petitioner argues that "the local residency requirement serves the important state interest of insuring that local elections are controlled by local voters instead of external special interests." Dft.'s Mem. in Opp'n, dkt. # 18, at 4. Again, the court of appeals addressed this issue in *Krislov*. The state of Illinois sought to justify registration and residency requirements for petition circulators on the ground that it had an interest "in allowing only Illinois voters to influence Illinois politics." *Krislov*, 226 F.3d at 865. The court of appeals noted that "[t]o the extent this law is designed to ... prevent[ ] citizens of other States from having any influence on Illinois elections, we question its legitimacy. Such laws are harmful to the unity of our Nation because they penalize and discriminate against candidates who wish to associate with and utilize the speech of non-residents." *Id.* at 866; *see also Lerman*, 232 F.3d at 152 ("A desire to fence out non-residents' political speech—and to prevent both residents and non-residents from associating for political purposes across district boundaries—simply cannot be reconciled with the First Amendment's purpose of ensuring 'the widest possible dissemination of information from diverse and antagonistic sources.'") (citation omitted). This is the same impulse that has led courts to cast a skeptical eye on laws that prohibit candidates from accepting campaign contributions from out-of-district residents. *See, e.g., VanNatta v. Keisling*, 151 F.3d 1215, 1217–18 (9th Cir.1998). Thus, in *Krislov*, 226 F.3d at 866, the court of appeals con-

cluded that because "circulating nomination petitions necessarily entails political speech, it follows that the First and Fourteenth Amendments compel States to allow their candidates to associate with non-residents for political purposes and to utilize non-residents to speak on their behalf in soliciting signatures for ballot access petitions." Wis. Stat. §§ 8.15(4)(a) and 8.40(2) do not further a compelling state interest to the extent they seek to prohibit non-residents from assisting a candidate in securing access to the ballot.

■ Finally, defendant argues that the residency requirement serves the state's compelling interest in preventing electoral fraud. Undoubtedly, Wisconsin has a compelling interest in preserving the integrity of its election process. *See, e.g., Swamp v. Kennedy*, 950 F.2d 383, 386 (7th Cir.1991). Defendant argues that a "circulator residency requirement helps uncover fraud by insuring that those who circulate nomination papers are subject to subpoena in the event they must be called to give testimony regarding the signatures they obtained" and insures that circulators are subject to arrest warrants, which may only be served in the state, if fraud is uncovered. According to defendant, the residency requirement thus makes "it as easy as possible to find and serve the circulator." Two initial points: First, I understand this argument's relevance to be limited to out-of-state petition circulators, rather than circulators who live in Wisconsin but collect signatures in political subdivisions in which they do not reside. Defendant does not suggest that the state elections board enjoys anything less than statewide subpoena power, so this interest cannot justify the requirement that a Wisconsin resident solicit signatures only in the particular election district in which she lives. Second, I note that courts have recognized that the risk of fraud is more

remote at the petition stage of a ballot initiative or candidate election than at the time of voting. *See Meyer*, 486 U.S. at 427, 108 S.Ct. 1886; *Lerman*, 232 F.3d at 149; *Krislov*, 226 F.3d at 865.

I am not convinced that an in-state residency requirement is narrowly tailored to serve a compelling government interest. As plaintiffs point out, because the registration requirement substantially burdens First Amendment rights, only narrowly tailored means can be used to achieve the state's goals, not those means that, in defendant's words, make the state's task "as easy as possible." In addition, there are other, less burdensome provisions in the challenged statutes that serve Wisconsin's goals of locating out-of-state petition circulators and preventing mischief in the ballot access process. For instance, petition circulators must provide their name and address, with street and number, at the bottom of each nomination paper and certify that they are aware that providing false information is a prohibited act punishable by a fine or jail time or both. *See* Wis. Stat. §§ 8.15(4)(a); 8.40(2); 12.13(3)(a); 12.60. These provisions suggest that the residency requirement is not narrowly tailored to facilitate the state's ability to locate out-of-state petition circulators and discourage fraud.

As for insuring that residents of other states who circulate petitions are subject to the state's judicial processes, I note that other courts have suggested less onerous methods for achieving that end. In *Chandler v. City of Arvada*, 292 F.3d 1236, 1243–44 (10th Cir.2002), the Court of Appeals for the Tenth Circuit considered an ordinance prohibiting non-residents of the city of Arvada, Colorado, from circulating city initiative, referendum or recall petitions within the city limits. The city sought to justify the ordinance on the ground that its subpoena power did not extend to persons residing beyond its borders and therefore it could not compel non-residents to participate in hearings contesting the validity of petition signatures. *Id.* at 1242. The court determined that the residency requirement was "not narrowly tailored to the City's compelling interest in policing its petition process." *Id.* at 1244. As an alternative, the court suggested that, as a prerequisite to circulating a petition, the city could require circulators to agree to submit to the municipal court's jurisdiction for purposes of subpoena enforcement. According to the court, this approach would be both less restrictive of First Amendment rights and better suited to the city's purpose because it would close a loophole by insuring the availability of circulators who were city residents at the time they collected signatures but who moved out of the jurisdiction later. *Id.*

Defendant's fraud argument faces a more significant hurdle. "When 'the Government defends a regulation on speech as a means to ... prevent anticipated harms, it must do more than simply posit the existence of the disease sought to be cured.'" *Krislov*, 226 F.3d at 865 (quoting *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). In his brief, defendant agrees that "there are no disputed issues of material fact, that the only disputed issue involves a question of law and that the court may therefore enter a final judgment on the pleadings." Dft.'s Mem. in Opp'n, dkt. # 18, at 1. Yet defendant has not even alleged that the state has experienced problems in the past with non-resident petition circulators or that such circulators are more likely to engage in fraud that in-state or in-district circulators. Defendant has failed to "show that the 'recited harms are real, not merely conjectural' and that the regulation will in fact materially alleviate the anticipated harm." *Id.* Accordingly, I cannot conclude that defen-

dant has shown that the residency requirement in Wis. Stat. §§ 8.15(4)(a) and 8.40(2) is narrowly tailored to serve a compelling state interest, either as it applies to Wisconsin residents who solicit signatures outside their own election districts or to out-of-state residents who circulate candidate petitions in Wisconsin. I conclude that the residency requirement violates the First Amendment and I will grant plaintiffs' motion for judgment on the pleadings.

## ORDER

IT IS ORDERED that the motion of plaintiffs Edward J. Frami, John P. Clark, Michael W. Schultz and Calvin J. Zastro for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is GRANTED. IT IS DECLARED that the residency requirement found in Wis. Stat. §§ 8.15(4)(a) and 8.40(2) is unconstitutional to the extent it prevents Wisconsin residents from circulating nomination papers outside the political subdivision in which they reside and to the extent it prevents persons who reside outside Wisconsin from circulating nomination papers on behalf of Wisconsin candidates. Defendant Steven V. Ponto is ENJOINED permanently from enforcing the residency requirement found in Wis. Stat. §§ 8.15(4)(a) and 8.40(2) to prevent Wisconsin residents from circulating nomination papers outside the political subdivision in which they reside and to prevent residents of states other than Wisconsin from circulating nomination papers on behalf of Wisconsin candidates. The clerk of court is directed to enter judgment for plaintiffs and close this case.