**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KARIM SALEHPOOR,

      Plaintiff - Appellant,

v.

MOHSEN SHAHINPOOR;
KEYKHOSROW FIROOZBAKHSH;
DAVID E. THOMPSON; REGENTS
OF THE UNIVERSITY OF NEW
MEXICO; and RANDY G. BOEGLIN,
individually and in their official
capacities,

      Defendants - Appellees.

No. 02-2314

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-00-1791 WPJ/LFG)**

---

Dennis W. Montoya of Montoya Law, Inc., Albuquerque, New Mexico, for
Plaintiff-Appellant.

Daniel Joseph Macke (Elizabeth L. German with him on the brief) of Brown &
German, Albuquerque, New Mexico, for Defendants-Appellees Keykhosrow
Firoozbakhsh, David E. Thompson, Randy G. Boeglin, and Regents of the
University of New Mexico.

Sean Olivas (Melanie Frassanito with him on the brief) of  Keleher & McLeod,
P.A., Albuquerque, New Mexico, for Defendant-Appellee Moshen Shahinpoor.

---

Before **EBEL, McKAY,** and **LUCERO**, Circuit Judges.

**McKAY**, Circuit Judge.

Appellant Salehpoor was a Ph.D. candidate in mechanical engineering at the University of New Mexico. Appellant alleges that, prior to the defense of his dissertation, he discovered and reported to UNM authorities that his academic advisor, Appellee Shahinpoor, illegally converted Appellant's research material for the benefit of his own corporation. He also claims that Shahinpoor gave the information to a visiting professor who transferred it to a graduate student in Iran for use in that student's thesis. Appellant alleges that after he complained to the Dean of the School of Engineering about Appellee Shahinpoor, UNM Appellees[1] conspired to deny him his constitutional rights concerning the defense and completion of his dissertation. Appellant alleges that, as a result, he was constructively discharged from the Ph.D. program and barred from campus without due process.

It is important to note the exact time line of events that underlie

___

[1]"UNM Appellees" include Mr. Firoozbakhsh (Visiting Orthopedic Professor at UNM), Mr. Thompson (Professor and Chairman of UNM Department of Mechanical Engineering), Mr. Boeglin (UNM Dean of Students), Regents of UNM. "Appellees" include UNM Appellees and Appellee Shahinpoor, Appellant's former academic advisor.

Appellant's complaint. Appellant's initial report to UNM authorities regarding the alleged conversion of his research materials took place in May 1998 when Appellant was still considered a doctoral student. After the Spring 1998 semester, Appellant's status changed to visitor because he was no longer enrolled as a student. Aplt. App. at 178, 183. Over the course of the summer and fall, Appellant and UNM Appellees made efforts to resolve the situation. Appellant's concerns were investigated and the Examining Committee found no merit to his allegations. Id. at 217, 225-26. After efforts to resolve the conflict failed, Appellant was barred from campus in December 1998 because his conduct had become increasingly disruptive, confrontational, and abusive. Id. at 183. Thus, even though the course of events is progressive, Appellant's complaint has two sequentially different components: 1) the initial report of the alleged conversion which took place while he was still considered a student, and 2) the ban from campus because of his behavior which took place while he was considered a visitor.

In his complaint, Appellant raised several federal and state claims, including deprivation of property without due process, conspiracy to deny him his constitutional rights in violation of § 1985, failure to adequately train and

supervise,[2] whistle blowing retaliation,[3] unjust enrichment, prima facie tort,

conversion, and defamation.  The district court dismissed all of Appellant's

federal claims against the UNM Appellees.  Then, in a later order, the court

dismissed all remaining federal claims, declined to exercise jurisdiction over the

state law claims, and dismissed the case in its entirety.[4]

On appeal, we are asked to address whether the district court erred in

granting UNM Appellees' and Appellee Shahinpoor's separate motions to dismiss

on the basis of qualified immunity which were construed as motions for summary

judgment.  "A motion to dismiss pursuant to Rule 12(b)(6) is treated as a motion

for summary judgment when premised on materials outside the pleadings, and the

opposing party is afforded the same notice and opportunity to respond as provided

in Rule 56."  Hall v. Bellmon, 935 F.2d 1106, 1110-11 (10th Cir. 1991).

Appellant, the nonmoving party, submitted all materials outside the pleadings

---

[2]Appellant does not address whether the district court erred in granting
UNM Appellees' motion to dismiss as to Appellant's failure-to-train-and-
supervise claim.  As such, we will not address it on appeal.

[3]The district court construed Appellant's whistle blowing retaliation claim
as a claim for retaliatory discharge for exercising his First Amendment right to
free speech.

[4]The district court granted Appellee Shahinpoor's Motion to Dismiss based
on the law of the case doctrine because of its prior decision granting summary
judgment to UNM Appellees based on qualified immunity.  Aplt. App. at 247-56,
306-12; see United States v. Platero, 72 F.3d 806, 810 (10th Cir. 1995) (when
court decides upon rule of law, decision should continue to govern same issues in
subsequent stages of case).

which were considered by the district court. Neither party argues on appeal that they were not given an opportunity to respond to these materials. Therefore, the district court correctly postured its dismissal of the case as one for summary judgment. We review *de novo* the district court's grants of summary judgment. Steele v. Thiokol Corp., 241 F.3d 1248, 1252 (10th Cir. 2001).

In evaluating claims of qualified immunity, we must first determine whether "the defendant's actions violated a constitutional or statutory right." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). We then "determine whether the right was so clearly established that a reasonable person would have known that [his] conduct violated that right." Id. at 1534-35. We have held that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Harris v. Robinson, 273 F.3d 927, 931 (10th Cir. 2001) (quoting Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)).

We note initially that Appellant's brief is conclusory and does not provide cogent arguments or legal authority supporting many of his claims. We will not "manufacture a party's argument on appeal when it has failed in its burden to draw our attention to the error below." Scott v. Hern, 216 F.3d 897, 910 n.7 (10th

Cir. 2000) (citations and internal quotations omitted). Additionally, Appellant relies almost exclusively on the allegations on the face of his complaint in his argument that the district court erred in dismissing the case. For example, Appellant subtitles several of his argument sections as follows: "The plain language of Appellant's complaint states claims for violation of due process" and "The plain language of Appellant's complaint states a claim for First Amendment violation." Aplt. Br. at ii, 21, 22. However, as noted above, this case was correctly decided as one for summary judgment – not for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Reference to facial assertions in a complaint are not sufficient to overcome Rule 56 summary judgment when the record as a whole reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995).

> The nonmoving party may not rest upon the mere allegations or denials of [his] pleading. The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

Id. (internal citations and quotations omitted). Additionally, the section in Appellant's brief which references "additional evidence" does not provide citations to the record in support of the "ample evidence" it claims exists. Aplt. Br. at 28-29. To the extent that we can decipher Appellant's arguments on

appeal, there is no support in the briefs or the record for his contentions.

Appellant's initial contention is that Appellees violated his due process rights. However, as stated by the district court, "[his] complaint is devoid of specifics regarding what due process rights were violated by [Appellees'] actions." Aplt. App. at 250. Appellant appears to be arguing that Appellees violated his substantive due process rights, but it is unclear from his briefs what substantive due process right or rights he alleges were violated. The district court, liberally construing Appellant's complaint, correctly held that Appellant had no clearly established substantive due process right to a temporary or replacement dissertation advisor, an office, or freedom from having to conduct a second dissertation defense.

Even assuming, without deciding, that Appellant had a clearly established right to continued enrollment as a doctoral student, the district court did not err in finding that Appellees' actions were not arbitrary. See Archuleta v. Colorado Dep't of Insts., 936 F.2d 483, 489 n.6, 490 (10th Cir. 1991) (majority assumed without deciding that plaintiff's property interest in enrollment was entitled to the protection of substantive due process); see also Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 227-28 (1985) (majority assumed for purposes of opinion that university student had substantive property interest in continued enrollment but held that any such right was not violated because university had not acted arbitrarily in dismissing student from program). After Appellant's May 1998

report to UNM Appellees that Appellee Shahinpoor illegally converted his research materials and Appellee Shahinpoor's alleged "offensive, prejudicial conduct towards Appellant and Appellant's Ph.D. dissertation program," see Aplt. Br. at 8, the record reflects that Appellant was given four options by the Associate Dean including: 1) leaving UNM, 2) completing his work under the direction of Appellee Shahinpoor, 3) completing a dissertation under the direction of another advisor, and 4) submitting a formal grievance. Aplt. App. at 223-24. Appellant chose to file a grievance and completed the grievance process and an appeal. He was also offered a liaison to assist in completion of his dissertation. Id. at 181-82. The record reflects that Appellees took Appellant's grievance seriously and investigated his concerns. See id. at 177-84, 221-26. It was not until December 1998, after efforts to resolve the situation had failed, that Appellant was given notice of the decision to bar him from campus for disciplinary reasons related to his behavior since the May 1998 incident and of his right to request a hearing – which he did not do. See id.

Appellant's next argument is that his complaint "alleges that [he] was expelled from UNM 'without a hearing of any kind.'" Aplt. Br. at 21. As noted by the district court, "[o]ther than setting forth generalized notions of entitlement to procedural due process . . . [Appellant] has not alleged deficiencies in the process he was afforded." Aplt. App. at 310 n.6. That Appellant's complaint

-8-

facially alleges a claim for procedural due process does not provide this court with any argument or evidence that Appellant was not in fact provided a hearing or due process of any kind. Indeed, Appellees cite to evidence in the record that Appellant was not expelled. See Aplt. Br. at 178, 181, 183. Instead, he was barred from campus in December 1998 when he was no longer enrolled as a student. See id. Appellant was barred from campus for emergency reasons related to his having violated the visitor's code of conduct. Id. at 183. He was given notice of the decision and advised of his right to have a hearing on that decision. Id. at 181. The record reflects that he did not elect to have a hearing. Without argument or evidence to the contrary, we cannot hold that Appellant was not provided procedural due process in this case.

Appellant next argues that the plain language of his complaint states a claim for a First Amendment violation. Again, a bald assertion without support does not provide this court with any argument that Appellant's First Amendment rights were violated. To the extent that Appellant argues that his speech was constitutionally protected, we cannot agree.

In order to prevail on his First Amendment claim, Appellant must show that (1) his speech relates to a matter of public concern, Connick v. Myers, 461 U.S. 138, 146 (1983); and (2) his interest as a public employee[5] in commenting on the

_____

[5]Appellant conceded at oral argument that the asserted protected speech
(continued...)

-9-

matter of public concern outweighs the interest of the government employer "in promoting the efficiency of the public services it performs through its employees," Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). Because Appellant's speech does not touch on a matter of public concern, we need not reach the second step of this analysis. See Connick, 461 U.S. at 146. In determining whether speech relates to a matter of public concern, we

> must consider the content, form, and context of a given statement, as revealed by the whole record. The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances or to address a broader public purpose.

Workman v. Jordan, 32 F.3d 475, 482-83 (10th Cir. 1994) ("[s]peech relating to internal personnel disputes is not regarded as a matter of public concern"); see also Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir. 1990) ("In drawing the thin line between a public employee's speech which touches on matters of public concern, and speech from the same employee which only deals with personal employment matters, we have looked to the subjective intent of the speaker.").

In order to analyze the character of Appellant's speech, it is important to

---

[5](...continued)
was made in the context of his status as a public employee while he was receiving his doctoral thesis at UNM. Appellant's counsel stated that "[t]he trial court seems to have used the employee analysis [in evaluating Appellant's First Amendment claim.]" Oral Argument, January 12, 2004. He further stated that "[w]e do not take issue with using [the employee analysis,] we think it makes sense," reasoning that "[graduate students] work under University faculty members and they get some stipend or payment." Id.

recognize that the speech under scrutiny in this case is Appellant's grievance concerning Appellee Shahinpoor's alleged theft and misuse of his research material. The speech at issue is *not* the subject matter of the dissertation itself. Therefore, Appellant's lengthy citations to popular media and legal authority regarding the public nature of his dissertation *topic* are irrelevant. That the topic of the dissertation may relate to a matter of public concern is immaterial. A public employee's speech does not attain the status of public concern simply "because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." Connick, 461 U.S. at 148 n.8. To receive First Amendment protection, "[w]hat is actually said on that topic must itself be of public concern." Wilson v. City of Littleton, Colorado, 732 F.2d 765, 769 (10th Cir. 1984) (while death of police officer could conceivably be topic of general interest to public, personal feeling of grief regarding that death is not matter of public concern).

Appellant never spoke on the public nature of the alleged diversion. He was concerned solely about the theft and conversion of his research, his "baby." See Aplt. App. at 212. It is in Appellant's motive – to redress the alleged conversion – that the character of his speech is revealed as personal rather than public. Appellant "did not seek to inform the public" of any "actual or potential wrongdoing." See Connick, 461 U.S. at 148. Instead, Appellant's grievance

-11-

concerned personal redress for the theft of what he considered to be his intellectual property. Speech on matters calculated to redress a personal grievance does not involve a matter of public concern.

Appellant believes that his case is similar to Luethje v. Peavine Sch. Dist. of Adair County, 872 F.2d 352 (10th Cir. 1989), and Chandler v. City of Arvada, Colorado, 292 F.3d 1236 (10th Cir. 2002). These cases are inapposite. The Luethje court held that a rule prohibiting cafeteria workers from speaking with anyone but the principal about cafeteria practices, along with implied threats of adverse employment action, impermissibly placed a restraint on an employee's speech. The court stated that "[a cafeteria worker's] complaints about unsanitary practices in the school's cafeteria and the administration's refusal to address them clearly dealt with matters of public concern." Id. at 355. The Chandler court held that speech in recall petitions which sought "to achieve political change in Colorado" was "core political speech." Id. Neither the law nor the facts in either case have any relevance to our case. Appellant "was lobbying for redress of purely personal grievances involving the alleged theft and misuse of his thesis materials." Aplt. App. at 309. Appellant never spoke on the public nature of the alleged diversion. He was concerned with the alleged theft of what he considered to be his intellectual property – purely a private interest.

Appellant's attempt to elevate his speech to that deserving constitutional

-12-

protection by alluding to weapons development and terrorism also fails. We agree

with the district court that

> [Appellant's] contention that fraudulent or illegal use of the
> information of his thesis could have possible ramifications for
> terrorism and methods of mass destruction [] does not elevate his
> grievances into constitutionally protected activity. Any practical use
> that could eventually result from [Appellant's] thesis material is
> incidental to the question of whether his *grievances* on its alleged
> misuse are constitutionally protected activities.

Id. at 309-10 (emphasis in original).

The district court correctly determined that Appellant's concern was the

"perceived theft of material toward which he felt some proprietary interest," the

motives for which were "clearly personal and emotional." Aplt. App. at 255

(citing Workman, 32 F.3d at 483). As such, the court did not err in granting

Appellees' motions to dismiss as to the First Amendment claims because

Appellant's speech was not constitutionally protected.

Appellant's single paragraph in his brief which alleges that UNM Appellees

conspired and acted in concert to deprive him of his constitutional rights based at

least in part on his race/national origin (Iranian) has no support in the record. See

Aplt. Br. at 27. "[A] conspiracy[] requires the combination of two or more

persons acting in concert." Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126

(10th Cir. 1994) (quoting Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230

(10th Cir. 1990)) (internal quotations omitted). In order to plead a conspiracy

claim, "[a] plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." Id. (quoting Abercrombie, 896 F.2d at 1231) (internal quotations omitted).

Appellant cites to his Affidavit as support for his conspiracy claim. Aplt. Br. at 27. However, the Affidavit contains only conclusory allegations that "[i]n agreement with each other, none of the [UNM Appellees]" questioned the actions of or took any action against the other UNM Appellees concerning Appellant's grievance. Aplt. App. at 152-57, 159. These unsupported assertions are not enough to overcome summary judgment. That individual UNM Appellees failed to take action against other UNM Appellees does not evidence agreement and concerted action. Parallel action – or inaction in our case – does not necessarily indicate an agreement to act in concert. See, e.g., Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1361 (10th Cir. 1989) (citing Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 541 (1954)) ("even conscious parallel business behavior, standing alone, is insufficient to prove conspiracy"). As correctly stated by the district court, "these facts concern [Appellant's] dissatisfaction with the way his grievance was handled, which are not cognizable as a constitutional claim." Aplt. App. at 253. Appellant's conspiracy claim was appropriately dismissed because he failed to set forth evidence of an agreement and concerted action on the part of the Appellees.

Additionally, Appellant did not set forth evidence of racial or class-based discriminatory animus as part of his conspiracy argument. His statement that "the manner in which [Appellee] Shahinpoor manipulated the system at UNM against me, and the manner in which [UNM Appellees] allowed this to happen [leads to the conclusion] that my being Iranian was a significant and motivating factor in how I was treated," has no support in the record. Id. at 159.

**AFFIRMED.**