COURT OF APPEALS OF VIRGINIA

Present:  Judges Huff, Fulton and White
Argued at Norfolk, Virginia

**PUBLISHED**

MARGARET WILLIAMS

v.      Record No. 1225-22-1

OPINION BY
JUDGE KIMBERLEY SLAYTON WHITE
MAY 2, 2023

PAMELA LEGERE, CATHERINE ALLPORT,
  TOM MAINOR, TINA REITZEL AND
  THE CITY OF WILLIAMSBURG

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Michael E. McGinty, Judge Designate

Christopher M. Woodfin (Woodfin Law Offices, PLLC, on briefs),
for appellant.

John P. O'Herron (Peter S. Askin; *Thompson*McMullen, P.C., on
brief), for appellees Pamela Legere, Catherine Allport, Tom Mainor,
and Tina Reitzel.

(Christina Shelton, City Attorney, on brief), for appellee the City of
Williamsburg.

Appellant Margaret Williams ("Williams") challenges the circuit court's application of

rational basis review upholding the initiative petition witness circulator residency requirement

found in Code § 24.2-684.1(5).  Williams also argues that the circuit court erred in dismissing

her challenge to the constitutionality of Code § 24.2-684.1(5) as applied by viewing the joint

Williamsburg/James City County School Board as two different entities.  As a result, Williams

additionally challenges the circuit court's refusal to grant a writ of mandamus compelling the

Registrar of the City of Williamsburg to count all qualified signatures submitted as a part of the

petition process without regard to the residency requirement of the witness circulators and to

certify to the court that her referendum petition is qualified for the ballot.  In finding that the

witness circulator residency requirement in Code § 24.2-684.1(5) significantly burdens political speech protected under the First Amendment, we hold that the restriction warrants strict scrutiny. Therefore, we reverse and remand for further proceedings consistent with this opinion.

BACKGROUND

Since 1954, the City of Williamsburg ("the City") and James City County have agreed to jointly operate a consolidated school division, with "the two School Boards . . . serv[ing] as one Board for all decisions regarding operation of the joint school system." The County's five members are directly elected by the County's voters, while the City's two members are appointed by the Williamsburg City Council.

Under Code § 22.1-57.2, "[t]he registered voters of any such county, city, or town may, by petition filed with the circuit court thereof, ask that a referendum be held on the question of whether the members of the school board of the county, city, or town shall be elected directly by the voters." On May 26, 2022, Williams, a resident of the City of Williamsburg, filed a Statement of Petition with the Circuit Court for the City of Williamsburg and James City County seeking such a referendum in time for the November 2022 election. The clerk of the circuit court accepted the petition on June 1. Williams then began to gather the required signatures for the petition from "registered voters equal in number to at least 10 percent of the number registered" that year in Williamsburg. Williams therefore needed 999 signatures from qualified City voters.

On July 19, 2022, Williams submitted what was believed to be 1,301 signatures to the circuit court to support the petition. On July 20, 2022, Williams submitted an additional 286 signatures to the circuit court to support the petition. Both submissions were made prior to the 111-day deadline imposed by Code § 22.1-57.2. On July 25, City Registrar Tina Reitzel filed a letter with the circuit court, notifying the court that upon review of Williams' petition, the petition contained 1,246 signatures of qualified City voters. However, only 13 pages of

signatures were witnessed by a person "qualified to vote, or qualified to register to vote, in the referendum," as required by Code § 24.2-684.1(5). Reitzel explained: "To meet this requirement, the witness must be a resident of the City of Williamsburg." However, the witnesses for the other 201 pages of the petition were "residents of either James City County or York County." Reitzel confirmed that "only 64 signatures were accepted as complying with the statutory requirements" due to the failure to comply with the witness circulator residency requirement.

On July 27, 2022, Williams filed a motion for emergency declaratory judgment, a temporary injunction, and a writ of mandamus to enjoin enforcement of the witness circulator residency requirement in Code § 24.2-684.1(5) in the circuit court. She named as defendants Pamela Legere, the chair of the Williamsburg Electoral Board; Catherine Allport, the Vice-Chair of the Electoral Board; Tom Mainor, the Secretary of the Electoral Board; and Tina Reitzel, the City Registrar—all in their official capacities. Williams argued in her motion that the law "imposes a sever[e] burden" on her First Amendment rights and was thus subject to strict scrutiny. She also asserted an as-applied challenge to the law, citing James City County residents' interests in the selection of the school board's members.

The City of Williamsburg filed a motion to intervene, which the circuit court granted. The City then filed a response to the motion in which it argued that strict scrutiny did not apply and instead "the regulation need be only rational, non-discriminatory, and content neutral to survive a challenge." As to the as-applied challenge, the City insisted the school board is two school boards—not one—so even if appellant could assert James City County residents' interests, they have no standing. The City's provided rationale for enforcing the requirement was: 1) ensuring that local referenda are initiated and pursued by residents of the locality legally impacted by the referendum, 2) ensuring local referenda are initiated and pursued by those

providing for its passage (by time and expense), and 3) "ensuring that a petition which may result in a very significant change to the City's Charter, only applicable to the City and its residents, is undertaken in compliance with the law and initiated and pursued by citizens of the City of Williamsburg, not residents of James City County."  The City further justified the requirement by stating that its effect was to protect "the integrity of the referendum process . . . by requiring that those driving the change and circulating the petition are would-be voters of the referendum itself."

In a final order on August 9, 2022, the circuit court granted the City's motion to intervene and dismiss, as well as the Election Board's demurrer.  The court ruled that strict scrutiny did not apply and found the statute nondiscriminatory and content neutral, therefore constitutional.  A final order was entered denying Williams' motions accordingly.  On August 17, Williams filed a petition for review with the Virginia Supreme Court as to the denial of the injunction, pursuant to Code § 8.01-626; the Supreme Court denied the petition on September 1.  Williams appealed the denials of the other requested relief to this Court on August 12.[1]

ANALYSIS

Williams' first assignment of error contests the circuit court's application of rational basis review rather than strict scrutiny.  The fact that strict scrutiny was not applied is not disputed.[2]

---

[1] This case was filed prior to the effective date of Rule 3:14A of the Rules of the Supreme Court of Virginia which now requires notice to be given to the Office of the Attorney General when the constitutionality of a Virginia statute is challenged.

[2] Williams failed to properly file the transcript or statement of facts in lieu of a transcript with this Court regarding the circuit court's August 9, 2022 hearing on Williams' motion. However, neither is indispensable to determine the merits of appellant's first assignment of error. *See Anderson v. Commonwealth*, 13 Va. App. 506, 509 (1992) (asking whether "the statement of facts is indispensable to a determination of the question presented" before dismissing appeal); Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues [related to the assignments of error], any assignments of error affected by the omission will not be considered.").

The City argues that the restriction on referenda petitions does not involve a fundamental right and therefore is subject to a lesser standard of review. Therefore, the primary issue is which tier of constitutional scrutiny applies to referenda (aka initiative) petition witness circulator residency requirements, a case of first impression for this Court.[3] This Court reviews de novo "questions of statutory and constitutional interpretation." *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 577 (2017) (quoting *L.F. v. Breit*, 285 Va. 163, 176 (2013)).

### A. The Circuit Court Erred in Refusing to Apply Strict Scrutiny

Under strict scrutiny, a law interfering with the rights afforded by the federal First Amendment will generally be upheld only if it is necessary and narrowly tailored to achieve a compelling government interest. A term synonymous with strict scrutiny is "exacting scrutiny." *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 206 (1999).[4] Under exacting scrutiny, the regulation promoting the government's compelling state interest may only prevail if it is by the least restrictive means. *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 197 (2014).

---

The parties have conceded on brief that the circuit court explicitly refused to apply strict scrutiny. *See Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 293 (2022) ("'While concessions of law are not binding on an appellate court, we may accept concessions of fact,' including concessions made for the first time on appeal." (first quoting *Williams v. Commonwealth*, 71 Va. App. 462, 488 n.9 (2020); and then citing *Logan v. Commonwealth*, 47 Va. App. 168, 170, 172 (2005) (en banc))). Williams preserved her argument in her written motion to the circuit court. This Court can therefore address that assignment of error.

[3] We do not reach the second and third assignments of error because in addressing the foundational constitutional analysis issue raised in the first assignment of error, we have determined that the appropriate remedy is to remand to the circuit court for further analysis consistent with this opinion. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." (cleaned up) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

[4] Thomas, J., concurring, interchanging exacting review with strict scrutiny, including in reference to *Meyer v. Grant*, 486 U.S. 414 (1988), where the Court applied exacting scrutiny.

Regarding state election laws and the right to engage in political speech, the level of scrutiny depends on the degree to which that right is restricted. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). These restrictions can be boiled down to two categories: ordinarily reasonable or nondiscriminatory burdens which receive rational basis review, and severe or discriminatory burdens which receive strict scrutiny. *Id.*; *Buckley*, 525 U.S. at 206 (Thomas, J., concurring). Rational basis review requires the challenger to prove that the regulation is not rationally related to a legitimate state interest. *Id.* However, the Supreme Court has stated "no litmus-paper test" separates valid ballot-access provisions from invalid interactive speech restrictions; such judgments are made on a case-by-case analysis. *Buckley*, 525 U.S. at 192 (citations omitted). "[T]he First Amendment requires us to be vigilant in making those judgments, to guard against undue hindrances to political conversations and the exchange of ideas." *Id.*

Addressing a challenge to a local referendum, our Supreme Court stated,

> A referendum is "an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest." The authority for referendum provisions stems from the concept of government that all power is acquired from the people. This concept is embodied in the Bill of Rights to the Constitution of Virginia which provides, "That all power is vested in, and consequently derived from, the people."

*R.G. Moore Bldg. Corp. v. Comm. for Repeal of Ordinance R(C)-88-13*, 239 Va. 484, 489 (1990) (citation omitted) (quoting Va. Const. art. I, § 2).

While there is no state precedent on the issue at bar, there is ample federal precedent. The Supreme Court has not directly ruled on the constitutionality of restrictions on the residency of petition circulators, but it has invalidated other restrictions on petition circulation. The Supreme Court has applied strict scrutiny to the prohibition of paid petition circulators, *see Meyer v. Grant*, 486 U.S. 414 (1988), a requirement that initiative-petition circulators be registered voters, a requirement that initiative-petition circulators wear identification badges

bearing the circulator's name, and a requirement that proponents of an initiative report the names and addresses of all paid circulators and amount paid to each circulator, *see Buckley*, 525 U.S. 182. The Court invalidated all such requirements as impermissible restrictions on the fundamental free speech right of political expression as guaranteed by the First Amendment. *See id.*

The Eastern District of Virginia applied strict scrutiny to strike down a district residency requirement for ballot petition circulators, and a state district residency requirement for ballot petition witnesses. *Lux v. Judd*, 842 F. Supp. 2d 895 (E.D. Va. 2012), *on remand from Lux v. Judd*, 651 F.3d 396 (4th Cir. 2011); *Libertarian Party of Virginia v. Judd*, 881 F. Supp. 2d 719 (E.D. Va. 2012), *aff'd*, 718 F.3d 308 (4th Cir. 2013). Here, the requirement is regarding the locality residency of referendum petition witnesses and circulators.

In *Meyer*, the Supreme Court held that the distribution of referendum petitions is a protected right to speech under the First Amendment and that any limitation on political expression is subject to "exacting scrutiny." 486 U.S. at 420-21 ("Appellees seek by petition to achieve political change in Colorado; their right freely to engage in discussions concerning the need for that change is guarded by the First Amendment."). There, exacting (strict) scrutiny was found to apply because "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id.* at 421-22. The Supreme Court found that the statute restricted political expression by (1) limiting the size of the audience appellees could reach by limiting the number of appellees' message carriers and the hours in which the message could be conveyed, and by (2) decreasing the likelihood that appellees could acquire sufficient signatures to place the matter on the ballot, limiting their opportunity to introduce the matter into statewide discussion. *Id.* at 422-23. The Court also determined that appellees' alternative avenues of communication did

"not take their speech through petition circulators outside the bounds of First Amendment protection." *Id.* at 424. The Court found that the "State's interest in protecting the integrity of the initiative process does not justify the prohibition because the State has failed to demonstrate that it is necessary to burden appellees' ability to communicate their message in order to meet its concerns." *Id.* at 426.

In *Buckley*, the Supreme Court struck down a state statute that required initiative-petition circulators to be registered voters, to wear an identification badge bearing the circulator's name, and required that proponents of an initiative report the names and addresses of all paid circulators and amount paid to each circulator, for violating the First Amendment's guarantee to the freedom of speech. 525 U.S. 182. The Court held that exacting scrutiny applies to state regulations "impos[ing] 'severe burdens' on speech" which must "be narrowly tailored to serve a compelling state interest." *Id.* at 192 n.12. The Court reiterated what it found in *Meyer*, that petition circulation involves robust political discussion which is "core political speech" for which First Amendment protection is "at its zenith." *Id.* at 186-87 (quoting *Meyer*, 486 U.S. at 422, 425). It also found that "[i]nitiative-petition circulators . . . resemble candidate-petition signature gatherers . . . for both seek ballot access." *Id*. at 191. The Court did not address the state residency requirement for initiative petition circulators in the statute because the parties did not challenge it on appeal; however it did strike the registration requirement because, like the restriction found in *Meyer*, such requirement "cuts down the number of message carriers in the ballot-access arena without impelling cause." *Id.* at 197. The Court considered Colorado's other less restrictive means already utilized to assert the state's interest of "protect[ing] the integrity of the initiative process, specifically, to deter fraud and diminish corruption" in its decision to strike down the contested requirements. *Id.* at 204-05.

Here, like in *Meyer* and *Buckley*, the City wishes to enforce a requirement which would cut down the number of political message carriers, thus limiting the audience Williams may reach. Like in *Meyer* and *Buckley*, the requirement here regarding the locality residency of initiative petition witnesses limits the number of registered voters Williams can reach, thus decreasing the likelihood she will be able to get her initiative on the ballot. Such a requirement substantially restricts Williams' ability to engage in "core political speech." Because this restriction on political speech is a clear deprivation of a right guaranteed in the First Amendment, courts must subject it to strict scrutiny.

In reaching a contrary conclusion, the circuit court relied in part on the Fourth Circuit's decision in *Kendall v. Balcerzak*, 650 F.3d 515 (4th Cir. 2011), which upheld a Maryland statute requiring that the solicited signatures of referendum petitions match the signer's surname on the voter registration list. While not binding on this Court, we find *Kendall* inapposite in any event. In *Kendall*, the Fourth Circuit held that "a State may establish non-discriminatory and content-neutral limitations on any referendum or initiative procedure" and that, insofar as such measures implicate speech concerns, a state's "important regulatory interests are generally sufficient to justify the restrictions." *Id.* at 524-25. Finding that a substantial relationship existed between the signature requirement and a compelling government interest that a locality has in preventing election fraud and discouraging unnecessary and capricious referenda, the court concluded that the restriction was constitutional. *Id.* at 528. The Fourth Circuit distinguished *Meyer* and *Buckley* as holding "that the First Amendment protects political speech incident to an initiative campaign because it protects the exercise of the state-created right of referendum. The state-created right is not, however, in and of itself a fundamental right." *Id.* at 524 (emphasis omitted).

Williams contends that *Kendall* is distinguishable from the case at bar because the restriction in *Kendall* related to the *signers*, the would-be voters, of a petition whereas the issue here involves a restriction on the circulators of a petition. Williams argues that the signature requirement is a procedural requirement on the electoral process whereas the witness circulator residency requirement is a restriction on core political speech more analogous to the requirements struck down via strict scrutiny analysis in *Meyer*, *Buckley*, *Lux*, and *Libertarian Party*. We agree.

A specific requirement for what must be contained in petition signatures, as in *Kendall,* is nondiscriminatory, warranting rational basis review, whereas requiring that petition circulators reside in the locality of circulation is exclusionary and therefore discriminatory, requiring strict scrutiny. Like the requirement struck down in *Meyer*, the requirement here "limits the number of voices that will hear appell[ant]'s message . . . therefore, limit[ing] the size of the audience [she] can reach . . . mak[ing] it less likely that appell[ant] will garner the number of signatures necessary to place the matter on the ballot, thus limiting [her political speech]." *Meyer*, 486 U.S. at 422-23.

Furthermore, the Fourth Circuit later instructed a district court to apply *Meyer* and *Buckley* to a law requiring that ballot-petition circulators be residents of the district in which the congressional candidate sought office. *Lux*, 842 F. Supp. 2d 895. The stated regulatory purpose of the requirement was the prevention of election fraud and preserving the integrity of the electoral process. *Id.* at 902. The Commonwealth argued that absent such geographic restriction, a circulator who is the subject of a regulatory inquiry may be beyond the Commonwealth's subpoena power. *Id.* The district court invalidated the law as a violation of appellant's First Amendment rights. *Id.* at 905-06. While acknowledging *Meyer* and *Buckley*, the court clarified that "[n]ot every voting, ballot, or campaign regulation, however, is subject to

strict scrutiny—only those that directly restrict or otherwise burden core political speech and associational rights." *Id.* at 901. The court recognized that, "[w]hen a state's election law directly implicates core political speech, such as petition circulation, the Supreme Court has uniformly subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest." *Id.* at 902. The court held that a district residency requirement on petition circulation implicated core political speech protected by the First Amendment and was, therefore, subject to strict scrutiny. *Id.* at 900-02. After determining that strict/exacting scrutiny applied, the court analyzed the state interest served by the residency requirement and whether such statutory regulation unduly restricted Lux's constitutional rights. *Id.* at 902. "Having determined from well settled First Amendment jurisprudence that the district residency requirement imposes a significant burden on Lux's rights, the task at hand for the Court is to assess whether Section 24.2-506 is narrowly tailored and advances a compelling state interest." *Id.* It is important to note that the court's decision and analysis were not based on ballot access, but instead on the denial of appellant's right to engage in political speech. *Id.* at 899.

Likewise in *Libertarian Party*, the statute at issue required that each signature on a ballot petition be witnessed by a legal Virginia resident who is neither a minor nor a felon with restored voting rights. 881 F. Supp. 2d 719. There, the district court struck down the statute, applying strict scrutiny, finding that the requirement was not narrowly tailored to achieve its purpose. *Id.* at 726.

Here, a locality residency restriction is being imposed on the core political speech of petition circulation just like the district residency restriction in *Lux*. The City argues that *Lux* is not applicable because the restriction there involved ballot access whereas the restriction here applies to initiative referendums. This line of reasoning fails; as the Supreme Court explained in

- 11 -

*Buckley*, "[i]nitiative-petition circulators . . . resemble candidate-petition signature gatherers . . . for both seek ballot access." 525 U.S. at 191. Moreover, the signature witness residency requirement in *Libertarian Party* is similar to the witness circulator residency requirement in the present case.

While also not binding on this Court, in *Yes on Term Limits v. Savage*, 550 F.3d 1023 (10th Cir. 2008), the Tenth Circuit struck down a Colorado law that required initiative petition circulators to be state residents. The Tenth Circuit held that strict scrutiny applied and that the ban on non-resident petition circulators violated the First Amendment. In its ruling, the Tenth Circuit relied heavily on its prior decision in *Chandler v. City of Arvada, Colorado*, 292 F.3d 1236 (10th Cir. 2002).

In *Chandler*, the court considered the validity of a city ordinance banning non-residents of Arvada, Colorado, from circulating petitions within the city under the First Amendment. *Id.* The *Chandler* court stated that "'[p]etition circulation . . . is "core political speech," because it involves "interactive communication concerning political change,"'" and consequently, First Amendment protection for this activity is '"at its zenith."' *Id.* at 1241 (alterations in original) (quoting *Buckley*, 525 U.S. at 186-87).

The *Savage* court found that, "strict scrutiny applies 'where the government restricts the overall quantum of speech available to the election or voting process . . . [such as] where the quantum of speech is limited due to restrictions on . . . the available pool of circulators or other supporters of a candidate or initiative.'" *Savage*, 550 F.3d at 1028 (alterations in original) (quoting *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000)).

As in the case at bar and *Chandler*, the non-residents in *Savage* sought to participate in petition circulation, involving core political speech, and the state government limited the quantum of speech through its residency requirements for petition circulators. *Id.* Here, the City

is enforcing a state requirement on initiative/referendum petition circulators and witnesses which limits them to those "qualified to vote, or qualified to register to vote, in the referendum for which he is circulating the petition," Code § 24.2-684.1(5). Like the petition circulator municipality residency requirement struck down in *Chandler* and the state residency requirement struck down in *Savage*, the City's enforcement of Code § 24.2-684.1(5) directly and substantially restricts First Amendment protected core political speech by limiting the number of circulators available to support an initiative.

Although the Fourth Circuit in *Kendall* considered as persuasive decisions from various other circuits regarding the political speech implicated in state regulations on the initiative referendum process, it did not analyze *Savage* or *Chandler* in coming to its conclusion, although both preceded *Kendall*. *Kendall*, 650 F.3d at 524-25. The fact that the residency requirements at issue in *Savage* and *Chandler* are clearly more analogous to the case at bar than the signature requirement in *Kendall*, combined with the Fourth Circuit's lack of consideration of these cases in that opinion, further distinguishes *Kendall* from the case at bar. Therefore, as the Tenth Circuit found in *Savage* and *Chandler*, as the Fourth Circuit found on remand in *Lux*, and on affirmance in *Libertarian Party*, and as the Supreme Court found in *Meyer* and *Buckley*, we too find that strict scrutiny applies to this requirement for petition circulators.

### B. The Dispute is not Moot.

"Generally, a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist." *Va. Mfrs. Ass'n v. Northam*, 74 Va. App. 1, 18 (2021) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)). However, there are limited exceptions to the mootness doctrine. "[T]he mootness doctrine may be inapplicable when a proceeding is short-lived by nature" and "[i]f the underlying dispute is capable of repetition, yet evading review." *Daily Press, Inc.*, 285 Va. at 452. This doctrine "should be

applied sparingly" *id.*, and "'only in exceptional situations' involving disputes of abbreviated duration where the party seeking review 'can make a reasonable showing that he will again be subjected to the alleged illegality,'" *Va. Dep't of State Police v. Elliott*, 48 Va. App. 551, 554 (2006) (first quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998); and then quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). We find such an exception applies here.

It is uncontested that the deadline to get a referendum on the November 2022 ballot has long since passed; it is also uncontested that the statutory residency requirement may be imposed again to limit future referendum petitions. The City contends that this controversy does not evade review due to the alternative remedies available to Williams to challenge Code § 24.2-684.1(5)'s constitutionality. However, the requirement for the mootness exception to apply is whether there exists a "reasonable expectation that the same complaining party [will] be subject to the same action again." *Northam*, 74 Va. App. at 19 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)). Williams has expressed an intent to file future referendum petitions, and the City has shown no indication that it will not enforce the statutory requirement in the future. Therefore, since this controversy is capable of repetition and the dismissal of such would cause it to evade review, we find that an exception to the mootness doctrine applies.

CONCLUSION

Because we find that Code § 24.2-684.1(5) significantly burdens Williams' right to political speech secured by the First Amendment, a strict scrutiny analysis is required. We therefore reverse and remand to the circuit court to apply the appropriate constitutional analysis in accordance with this opinion.

*Reversed and remanded*.